The first case to be argued is Axonics v. Medtronic, 2022, 1451 and 1452, Mr. Nelson. And for purposes of facilitating and questioning and avoiding stepping on each other, Judge Torano is invited to lead off with any questions he has, which doesn't preclude him from asking later questions. Mr. Nelson. Thank you. Good morning and may it please the Court. The challenged patents here claim a medical lead with electrodes at the tip for neurostimulation and rows of tines for fixation in human tissue behind them. The issue on appeal is that the Board erred when it found that Axonics had failed to demonstrate why a skilled artisan would be motivated to modify the primary reference called Young, which featured one electrode at the tip of the lead and multiple rows of tines behind it, to place one additional electrode at the tip. I want to emphasize the narrow gap between Young and the challenged claims. Young already disclosed one electrode at the tip in front of all the tines. Axonics only needed to show why a skilled artisan would be motivated to get to two electrodes in front of all the tines. The Board had all of this and evaluated it and we owe deference to the Board. I haven't heard you make any reference to deference. So the Board erred both as a matter of law in reaching the conclusion that there was no motivation to combine and there is a failure of substantial evidence. I'll explain why in a nutshell. The incoherent result the person of skill in the art, which it defined as a specialist in the field of sacral neuromodulation, neurostimulation of the sacral nerve, would not have followed an express suggestion in the Young reference to combine because it would have resulted in a lead that was not suitable or not feasible, in the Board's words, for use to stimulate a different nerve, the trigeminal nerve. That requirement of trigeminal stimulation is not found in the challenged claims and it is a fact that would be of no consequence or concern whatsoever for the Board's skilled artisan in sacral neuromodulation. But I thought your first point was that the patent is broader than sacral nerves and that the Board made a narrow definition both of the relevant art and the problem solved by the invention. I was responding to Judge Lurie's problem here and I'm pointing to an incoherent result by the Board, which is that its own person of skill in the art, who cares only about sacral neuromodulation, would have rejected this suggestion to combine because it results in something that's not operable for trigeminal stimulation, a different nerve. So that is what I meant by that. This is Judge Toronto. Can I just ask this question? It seems to me that you're quite right to emphasize, at least this morning, the Board's adoption of Medtronic's own definition of the relevant artisan, which is a sacral nerve stimulation artisan. So you need to ask, the Board needed to ask the question, how would that person, reading Young, understand an observation in Young about putting an electrode near the tip and more generally think about combining Young with Gerber to solve at least a sacral nerve problem, but in fact even more generally, and that it is hard to understand whether the focus is on the more general scope of the 314 or the underlying sacral nerve problem, how it is that the analysis of Young could be limited to what would work in the trigeminal nerve area where there are space limitations that I think nobody is suggesting exist outside that. If I've understood your argument, is this a legal error, and if so, what? Is it a simple unreasonableness criticism for purposes of substantial evidence review, or what? Your Honor, it is both a failure of substantial evidence for the reasons that you just rehearsed. There is no substantial evidence to support that result that I just explained, that a person of skill in the art in trigeminal and sacral nerve modulation or the broader person of skill in the art in medical lead implantation, that axonics advanced, would reject Young's suggestion to add an electrode at the tip of the lead because it wouldn't be operable for trigeminal stimulation. Neither of those persons of ordinary skill in the art would have rejected that suggestion. So there is a failure of substantial evidence, but the root of that decision here is contrary to this Court's line of cases, beginning with allied erecting, holding that obviousness does not require a showing that a secondary reference, like Gerber, could be bodily incorporated into the primary reference, Young, to make an operable device. That's the wrong question under this Court's authority. Instead, the question for the Board is the allied erected standard, which is whether a skilled artisan would have been motivated to combine the teachings of the prior art to achieve the claimed invention. Under that standard, the fact that a proposed combination would not be operable for some purpose not recited in the claims does not demonstrate the absence of a motivation to combine, even if that original purpose was important to the primary reference. As long as there is motivation to achieve the claimed invention, which, as we've noted, has nothing to do or is not limited to trigeminal stimulation. This Court, in In re Urbanski, relied explicitly on the fact that the challenge claims did not recite the purpose or benefit that would be lost by the proposed combination in rejecting the very argument that Medtronic made here and the Board adopted here. And that's at page 1244 of Urbanski. Now, Medtronic has said that, well, in Urbanski, which you wrote, Judge Lurie, that the Board properly weighed the evidence and found that the combination would not render the modified process inoperable for its intended purpose. That's not what this Court found. Medtronic misreads what that opinion says at page 1243. This Court agreed that the proposed combination in Urbanski would render the modified process inoperable for the original purpose, but still found a motivation to combine. It did so because it found that one of ordinary skill would have been motivated to pursue the desirable properties taught by the combination, even at the expense of foregoing the benefit taught by the primary reference, in this case, trigeminal stimulation. That's what should have happened here. The cases tell us that what matters is whether a skilled artisan would be motivated to achieve the claimed invention, not some unclaimed purpose. If that teaching or suggestion would have motivated that skilled artisan to achieve the claimed invention, it's not relevant that some unclaimed purpose might be frustrated on the way there. That's the only principle that makes sense here. It's the only principle that follows KSR's teaching that a person of ordinary skill in the art is a person of ordinary creativity, too, not an automaton. The Board's person of skill in the art lacks that ordinary creativity. She simply gives up because Young's lead wouldn't be operable for trigeminal stimulation. That's not what KSR teaches. It's not what Allied Erecting teaches. It's not what Urbanski teaches. It's the only principle, the principle of Allied Erecting, that doesn't lead to the nonsensical result that the Board's skilled artisan in sacral neuromodulation finds no motivation to combine because the lead that results would be infeasible for trigeminal stimulation, something over which she has no concern. Now, the Board rejected this argument, claiming that an unclaimed purpose is pertinent to motivation to combine. It relied on this Court's decisions in Intelligent Biosis, In Re Gordon, and Trivascular v. Samuels. As axonics explain in its brief, none of those cases stand for the proposition that a failure of continued operability for some purpose would overcome an unmistakable motivation to combine to achieve the claimed invention. Rather, each of those cases concerned a straightforward failure to demonstrate any motivation to combine references at all. For example, in Intelligent Biosis, the proposed motivation to combine was the primary reference's disclosure of a quantitative deblocking requirement, something that was not in the challenge to the patent. But the second reference that was proposed as the combination, it was found, contained nothing that could accomplish quantitative deblocking. So, of course, that unclaimed purpose was relevant to motivation to combine, but only because it highlighted a failure of proof. There's nothing like that here, where Young itself expressly suggests the motivation and the evidence in front of rows of tines. The same is true of In Re Gordon and Trivascular for the reasons we've described in our brief. So under the correct principle of law, which is whether a person of skill in the art would have been motivated to achieve the claimed invention, Young's express suggestion to add electrodes near the tip of the lead would have led that person of skill in the art to Gerber's complimentary disclosure of multiple electrodes for sacral neuromodulation. Counsel, you're into the rebuttal time you wanted to save. You can continue or save it as you wish. I will reserve my rebuttal time. I will just say that on this basis alone, leaving perhaps for rebuttal the second basis, the board's finding of no motivation to combine should be reversed and remanded. Thank you. Mr. Bancel. Good morning, Your Honors. May it please the court. I want to ask whether there's at least a clear error here by the board in saying the field of the invention is limited to sacral stimulation when the claims are not so limited, right? I mean, that's clear error. No, Your Honor, I do not believe that it is error. And why not? Well, because when you look at the claims, you can see that there's not a clear error. But when you look at the description of the patent, it's all about sacral neurostimulation. No, no, no. The claims are broader than that, right? Yes, Your Honor. The claims are broader than that. How can it be that the field of the invention is narrower than the claims? Your Honor, I do not believe that the board's finding of the field of invention is actually relevant to the claims. What I'm asking you is how can it possibly be that the field of the invention is narrower than the claims? Your Honor, the board looked at the field of the invention in the context of determining who a person of ordinary skill in the art would be. So in that particular context for determining who a person of ordinary skill would be, the board is not limited to what is recited in the claims. Because the claims may vary. You can have a field of the invention that's narrower than the claims? Yes, Your Honor. On the express wording of the claims, the field of the invention can be narrow. What case is that? Your Honor, I do not have a case to give you on how do you define the field of the invention. But I want to bring the court back to... It seems to me that the result of that is that they were somewhat dismissive of this Young reference, which isn't within the field of the invention as they defined it. That's part of the problem. Your Honor, I think Exonix wants you to believe that the board was dismissive based on the field of invention. But that is not true. If you look at the board's decision, the board credits the testimony of their declarant regarding Young disclosing several limitations of the field of the claims. If the board were simply ignoring Young based on Young not being within the field of the invention, this appeal would have been even more simpler because the board would have simply found, look, we're not going to consider Young at all. But the board did consider Young. Here, Your Honor, the dispute... They didn't consider Young when they were looking at the Tauke line of cases where two references are in the same field of art. That in itself suggests a combination. They did dismiss it in that connection. They did dismiss it in finding that Young does not solve the same problem as the 314 and 756 patents. So if you were to focus on this idea that there is motivation to combine simply because the references solve the same problem as the invention, then the board there made a factual finding saying, no, look, Young does not solve the same problem as the 314 and 756 patents. So there, I do not see how the field of the invention necessarily discredits what the board did. And I think it's important, Your Honor, to focus on what the board found as far as motivation to combine as opposed to things that Exonix believes the board found. So there is one factual finding here by the board that is supported by substantial evidence that is dispositive. And that is the board's finding that Young's sentence about multiple active stimulation sites near the tip is not suggesting including a plurality of electrodes distal to the tines. And why is that important? That is important because the sole rationale behind Young's sentence, the sole rationale that Exonix offered to modify Young to include electrodes distal to the tines was based on the interpretation of that one sentence in Young. Exonix argued... And I'm struggling to hear a good deal of what you have to say. And I apologize for that. I don't know what the problem is. But on the merits, so there were two things discussed by the board. One has to do with this same problem or not same problem. And putting aside, just for purposes of this question, I'll accept that the board did in fact treat Young as prior art. That was part of the consideration. It didn't exclude it somehow outside the field. But then the question is how it treated it. And then the second issue was about how to interpret this near the tip sentence in Young. My problem with the second point is that on page 35 of the appendix where the board is discussing that, it adopts by reference back to the block quote on I think page appendix 33 of Dr. Slavin. Dr. Slavin says a skilled artisan would not interpret that to mean putting at least two electrodes distal to the tines, because it wouldn't work in the trigeminal area. So that in turn relies on the very same narrowing of focus to what would work in the trigeminal nerve area, which seems to come back to the same problem of the board's narrowing of its focus in what Young could support by way of combination either for general nerve stimulation or even ornately to the skilled artisan that you proposed and the board adopted, namely a sacral nerve stimulation. I don't see that as being independent of the question of whether the board mistakenly narrowed its focus to what would work in the trigeminal nerve area. So, Your Honor, let me unpack that a little bit. I think we have to go back to what was the dispute between the parties and what is it that the board resolved. So if you look at the petition, appendix 207, and if you look at Exonix's reply, the petitioner's reply, their motivation to combine was premised on Young suggesting adding distal electrodes or adding electrodes distal to the tines. So they provided, Exonix provided one interpretation of Young, and I think you can see that on appendix 4421, which is the testimony of Exonix's declarant. He said, at least to me, the natural thing would be to add the electrodes where the current electrode in Young is, which is distal to the tines, and the board cites that. So this is Exonix saying, to us, Young's sentence means X. Dr. Slavin, in his response, said, well, Young's sentence doesn't mean X. And the board ultimately agreed, finding on appendix page 35, that Young discloses multiple active sites near the tip, not at the tip or distal to the tines. In view of Young simply disclosing multiple active sites near the tip, without any relation to the tines, and Dr. Slavin's testimony, that the board can say that, look, Exonix's rationale or its interpretation of Young is not correct. And that is a factual finding entitled to deference and appeal under the substantial evidence review standard. But it's not independent of the reasoning that Dr. Slavin gave, which, if I remember right, and I think this is the block quote on A33, relies on what somebody reading Young and thinking about the specific trigeminal nerve space would take away, not what somebody thinking about either the more general problem of, you know, securing a nerve stimulator, or the more specific problem of securing a nerve stimulator for the sacral nerve, would think. So I just don't see how that's independent of an error, if it is an error, in the narrow focus on the trigeminal nerve area. Your Honor, the narrow focus on the trigeminal nerve area is completely appropriate here, because we are trying to understand what does Young mean when it says, multiple active stimulation sites near the tip. I'm sorry, aren't we trying to understand what the relevant artisan, and this is your artisan, the sacral nerve artisan, would take as suggested by what he's reading? Your Honor, I think that's partly true. But I think the way the dispute was framed before the Board is, Exonix said, this sentence means X, and the Board said, no, it doesn't mean X in the context of Young. And because it doesn't mean X in the context of Young, the sole rationale that Exonix provided to the Board for motivation to combine fails, because Exonix misinterpreted the reference. This is not a situation where the argument was, look, Young suggests all these other benefits that a person of ordinary skill in the art could undertake and then ignore its teachings. There was an argument made below, the sole reasoning provided by Exonix, that Young's sentence about multiple active stimulation sites near the tip, means providing electrodes distal to the tines. And the Board made a factual finding. I don't think there's anybody who would disagree. That's a factual finding by the Board. That's not what Young means. And in order for the Board to make the factual finding, the Board has to understand... Why wouldn't someone skilled in the art of sacral stimulation look at that reference and say, well, there's a problem here with the facial nerve in having it near the tip, because there's not enough room for it, but there's no problem putting it near the tip when we're dealing with sacral stimulation. Your Honor, that's a good question, and I think hopefully this will help me also answer Judge Toronto's question. And I think it's the last part of your question, the assumption that a person of ordinary skill in the art looking at Young would understand that, well, something may not work in Young, but that would work in the sacral nerve area. There is no evidence that a person of ordinary skill in the art, at the time of the invention, would understand that if you were to use Young's lead modified the way Exonix is modifying, that such a lead would not hurt a patient or would actually work in the sacral space. So without that evidence... Gerber, which has two electrodes distal from the attachment point, right? And they relied on that. Yes, but what Gerber doesn't have, Your Honor, are tines. But if you look at Gerber, you see two electrodes distal from the attachment point. Why wouldn't you combine that with Young, which shows tines? Your Honor, I think we have to go back to the record. In the record, the argument that was presented to the Board is that the motivation to combine comes from the sentence in Young, and I want to actually read that to you, Your Honor, from the reply. I'm on appendix page 964. I think we should look at this together, Your Honor. Exonix says on appendix page 964, Young provides the motivation to combine multiple electrodes from Gerber when it says its lead could be improved to provide multiple active stimulation sites near the tip. And then Exonix on appendix page 965 says the tip reference here is the distal tip, where Young's original electrode was located, which is distal to all the tines in Young. So they're saying, look, the sentence is suggesting adding more electrodes distal to the tines. And the Board said, no, that's not what it is suggesting. So that is a factual finding based on the record, the way that the record developed below. And I understand your concern about, well, why can't we look at this more broadly? That Young is saying you can add more electrodes and then Gerber shows multiple electrodes and we can combine all of this. Do you agree that Gerber shows multiple electrodes distal from the attachment point? I do agree with you that there is an anchoring mechanism that is proximal to the two electrodes in Gerber. But I think what we're looking at, Your Honor, is the record and the reasoning that was offered to the Board, which the Board rejected. That is a factual finding that is independent of any legal error. And then coming on this whole inoperability issue, Your Honor, if a reference, if a primary reference is rendered inoperable for its intended purpose, that is a relevant factor that the fact finder here at the Board can look to to find no motivation to combine. The Trivascular case says that. The Ingrid Gordon case says that. If there's a common purpose. And I assume you're familiar with the Medtronic case that came out yesterday. I did see that case, Your Honor. And in that case, there was a sentence where this court said that the inoperability aspect is not legally irrelevant to obviousness. Which, again, is the same thing as saying a fact finder can consider inoperability. But, again, I want to make sure that we're not hung up on inoperability in saying, okay, look, there's no motivation to combine because Young would be rendered inoperable. That's a secondary finding by the Board. The primary dispositive finding by the Board is that Young doesn't say what Exonix believes it says. And that is a factual finding by the Board entitled to Thank you. Mr. Nelson has some rebuttal time. Thank you, Your Honors. I first want to address what I believe is a mischaracterization of the actual argument for motivation to combine advanced by Exonix before the Board. In fact, if you look at Appendix 207 or Appendix 290 in either of the two petitions, Exonix specifically advanced the theory of motivation to combine that Judge Dyke noted, which is that Young's express disclosure of adding an additional electrode at the tip would have led them to Gerber's disclosure of multiple electrodes at the distal end of the anchoring mechanism. That's exactly what Exonix proposed to the Board and the Board rejected. With respect to the notion that Exonix did not show and the Board found as a separate and independent basis that there was no motivation to add the electrode distal to all of those tines, as Judge Dyke proposed to combine, is premised on its crediting of Dr. Slavin's testimony that adding that electrode would push the tines out of the trigeminal cistern and render that lead inoperable for trigeminal stimulation, which, as I covered in my opening presentation, is simply the wrong question. And the flaw in Medtronic's reasoning here, and the Board's, is the question this Court asked repeatedly, which is that the Board didn't ask what a skilled artisan would conclude upon reading Young and the complementary disclosure of Gerber. It asked, well, if I stuck an electrode on the end of this lead in Young, it wouldn't work for trigeminal stimulation, and so we're finished here. That's the wrong framework and the wrong question. I did want to briefly address the Board's rejection of a motivation to combine from the shared problem set of these patents. It is the case, as noted by the Court, that none of the claims of the 314 or 756 patents recite sacral neuromodulation as its purpose, or even in the preamble. The specification of the 314 and 756 patents has a clear statement in the summary invention that the problem they address is much broader than sacral neuromodulation. It provides a solution to problems associated with implanting and maintaining electrode leads in body tissue. The specification also discloses other uses for its claimed lead beyond sacral neuromodulation. It says you can use it for neurostimulation in the stomach muscle. You're absolutely right. There is no basis to limit the field of invention to sacral neuromodulation, but under either correct rendition of person of skill in the art, the Board's adoption of a person of skill in the art in sacral neuromodulation, or the broader formulation, the fact that the resultant grafting of an electrode to the tip of Young's lead would result in inoperability for sacral neuromodulation would not prevent a skilled artist from finding a motivation to combine. Thank you.